IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:10-CR-0356-1** |
| | : | |
| v. | : | **(Chief Judge Conner)** |
| | : | |
| **LUIS OSVALDO LEGER-MONEGRO** | : | |

## **MEMORANDUM**

Presently before the court is a motion to set aside judgment (Doc. 61) pursuant to 28 U.S.C. § 2255 filed by Luis Osvaldo Leger-Monegro ("Leger-Monegro"). For the reasons set forth below, the court will deny the motion.

**I.    Background and Procedural History**

Leger-Monegro is a citizen of the Dominican Republic who became a lawful permanent resident of the United States in 1996. (Doc. 61 ¶ 11). On December 15, 2010, a federal grand jury sitting in the Middle District of Pennsylvania returned a two-count indictment charging Leger-Monegro and his wife, Maribel Leger ("Maribel"), with providing false information to the United States Department of Housing and Urban Development ("HUD"), in violation of 18 U.S.C. § 1001, and stealing public money, in violation of 18 U.S.C. § 641. (Doc. 1). Leger-Monegro and his wife lived in a multi-family Section 8 project-based housing development funded by HUD. (Id.) From 2001 to 2010, they misrepresented their income to authorities, which affected the determination of their monthly rent amount. (Id.) The indictment alleges that such misrepresentations resulted in a loss to HUD of $73,458.00. (Id.) Attorney Jennifer P. Wilson ("Attorney Wilson") was appointed to represent Leger-Monegro in the criminal matter.

On August 8, 2011, Leger-Monegro pleaded guilty to providing false information to the government pursuant to the first count of the indictment. (Docs. 38, 39, 40). On January 30, 2012, the court sentenced Leger-Monegro to two years probation. (Doc. 55). The court also ordered Leger-Monegro and his wife to pay $73,458.00 in restitution to HUD. (Id.)

Following Leger-Monegro's guilty plea, the Department of Homeland Security charged Leger-Monegro with removal as an aggravated felon pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). (Doc. 78 at 5). Leger-Monegro qualifies as an aggravated felon eligible for removal pursuant to 8 U.S.C. § 1101(a)(43)(M)(i), which defines an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000" as an aggravated felony. Defendant was ultimately removed to the Dominican Republic in approximately October 2012. (Doc. 72 at 15).

On February 11, 2013, Leger-Monegro filed the instant motion to set aside the judgment. (Doc. 61). He alleges that Attorney Wilson provided ineffective assistance of counsel by failing to adequately inform him of the deportation consequences of his guilty plea. (Id. ¶¶ 14-18). Namely, Leger-Monegro stated in his motion that Attorney Wilson directed him to consult with immigration counsel, who told him that as long as he was not sentenced to one year or more of incarceration, he would not be subject to removal. (Id. ¶ 16). The court conducted an evidentiary hearing on Leger-Monegro's motion on November 8, 2013. (Doc. 72).

Leger-Monegro was not able to testify at the hearing because of his removal to the Dominican Republic. However, Maribel testified that they sought legal

advice from an immigration attorney named Ahmad Rashad ("Attorney Rashad") in Harrisburg. (Id. at 8, 16). Maribel stated that the immigration attorney suggested that Leger-Monegro should seek a sentence of less than a year in jail in order to avoid deportation. (Id. at 11). Leger-Monegro's wife testified that "we would have fought it" had they known that deportation was a possibility under the plea agreement. (Id. at 12).

Attorney Wilson also testified at the hearing. She testified that Leger-Monegro's immigration status was the "most significant factor" in responding to the criminal charges and undergoing plea negotiations with the government. (Id. at 20-21). Leger-Monegro "readily agreed" with Attorney Wilson that, based on the strong evidence against him, "there would be nothing gained by taking his case to trial." (Id. at 34). Attorney Wilson repeatedly advised Leger-Monegro that one consequence of pleading guilty to the offenses could be deportation. (Id. at 20-21). She initially asked the government to consider a guilty plea to a misdemeanor offense, but the government refused. (Id. at 22). Additionally, according to Attorney Wilson, Leger-Monegro "was very keen to have a probationary sentence as opposed to an incarcerative sentence." (Id. at 23).

In June 2011, Attorney Wilson encouraged Leger-Monegro to contact an immigration law specialist for additional advice concerning the possible deportation consequences connected to a conviction. (Id. at 23-24). Several weeks later, Attorney Rashad contacted Attorney Wilson and told her that he had met with Leger-Monegro. (Id. at 24). Attorney Rashad advised Attorney Wilson that "it

would be better from an immigration perspective if the plea agreement itself did not contain a dollar amount." (Id. at 24-25). Attorney Rashad also advised Attorney Wilson that "if the sentence were a probationary sentence of 12 months less a day, then that would considerably improve Mr. Leger-Monegro's odds of not facing an immigration consequence." (Id. at 25-26). Attorney Wilson emphasized that Attorney Rashad did not advise her that receiving a probationary sentence of less than 12 months "would be a guarantee or that that was a perfect solution. It was simply expressed to me in terms of improving the situation." (Id. at 31).

Based on Attorney Rashad's advice, Attorney Wilson obtained consent from the government to remove the loss amount from the plea agreement. (Id. at 25). Leger-Monegro then met with Attorney Wilson and they reviewed the final plea agreement together. (Id. at 27). The plea agreement was non-binding, with no consensus on sentencing, so Attorney Wilson repeatedly advised her client "that there were no guarantees with respect to the sentence" or "with respect to deportation consequences." (Id. at 29-30).

Following the hearing, the court allowed for the record to remain open until December 31, 2013, to permit defense counsel to attempt to obtain Leger-Monegro's testimony. Defense counsel did not provide any additional information after the evidentiary hearing. The court closed the record on January 7, 2014 and ordered supplementary briefing. (Doc. 71). The motion is fully briefed and ripe for disposition.

**II.     Legal Standard**

Under 28 U.S.C. § 2255, a person "in custody" may move the sentencing court to vacate, set aside, or correct the movant's sentence.[1]  In general, relief under § 2255 is afforded based on one of four grounds: (1) the sentence was imposed in violation of the Constitution or other federal laws; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  R. GOVERNING § 2255 CASES 1(a).

A collateral attack based on ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984).  To prevail on this claim, a movant must demonstrate (1) that counsel's representation fell below an objective standard of reasonableness based on prevailing professional norms and (2) that the deficient representation was prejudicial.  See id. at 687-88.  Conclusory allegations are insufficient to entitle a movant to relief under § 2255.  See Sepulveda v. United States, 69 F. Supp. 2d 633, 639-40 (D.N.J. 1999) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

---

[1] An individual under probation, such as Leger-Monegro, is still considered "in custody" for purposes of filing a motion pursuant to 28 U.S.C. § 2255.  See United States v. DeGregory, 220 F. Supp. 249, 251 (E.D. Pa. 1963), *aff'd by* 341 F.2d 277 (3d Cir. 1965), *cert. denied by* 382 U.S. 850 (1965).  The fact that Leger-Monegro's probationary sentence recently expired does not moot his motion because he continues to experience deportation as a collateral consequence of his conviction.  United States v. Romera-Vilca, 850 F.2d 177, 179 (3d Cir. 1988).

In determining whether counsel has satisfied the objective standard of reasonableness in accordance with the first prong, courts must be highly deferential toward counsel's conduct. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See United States v. Gray, 878 F.2d 702, 710 (3d Cir. 1989). Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance." Id. at 711 (citing Strickland, 466 U.S. at 689-90).

To satisfy the prejudice prong, the movant must show that, but for counsel's errors, the outcome of the proceeding would have been different. See Strickland, 466 U.S. at 694. The district court need not carry out its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing in one. Id. at 697.

### III. Discussion

To establish ineffective assistance of counsel, a defendant must satisfy both prongs of the Strickland test by showing that: (1) counsel's representation was objectively unreasonable; and (2) counsel's deficient performance was prejudicial. See Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000) (citing Strickland, 466 U.S. at 688, 694). Leger-Monegro fails to demonstrate that Attorney Wilson's advice was deficient or that any deficient performance on her behalf caused him prejudice.

### 1.     First Prong of the Strickland Test

The court must first determine whether Attorney Wilson provided Leger-Monegro with effective assistance of counsel.  The Supreme Court determined in Padilla v. Kentucky, 559 U.S. 356 (2010) that a criminal defense attorney must inform her client when a conviction of pending criminal charges may result in deportation.  Moreover, in cases where the law is sufficiently "succinct and straightforward," defense attorneys are required to advise their non-citizen clients of the specific removal consequences of their guilty plea, rather than simply advising the clients of a general risk or possibility of removal.  Id. at 369.  Such requirements are in addition to defense attorneys' overall duty to refrain from providing any affirmative misadvice concerning deportation.  Id. at 369-71; see also id. at 388 (Alito, J., concurring) ("Accordingly, unreasonable and incorrect information concerning the risk of removal can give rise to an ineffectiveness claim."); Gudiel-Soto v. United States, 761 F. Supp. 2d 234, 238 (D.N.J. 2011) (holding that "[a]n attorney's complete failure to provide advice and 'affirmative misadvice' both qualify as ineffective assistance of counsel" under Padilla).

Leger-Monegro alleges that (1) because the deportation consequences of his conviction were "succinct and straightforward," Attorney Wilson was required to specifically advise him concerning the risk for removal as an aggravated felon pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii); and (2) Attorney Rashad provided

affirmative misadvice to Leger-Monegro when he advised that Leger-Monegro was only at risk for removal if he was sentenced to more than 12 months imprisonment.

### A.   Attorney Wilson's Duty

The parties do not dispute that Attorney Wilson informed Leger-Monegro that a guilty plea could possibly result in adverse immigration consequences. (Doc. 72 at 20-21, 29-30). However, Leger-Monegro alleges that, in his case, the law was sufficiently straightforward to require Attorney Wilson to advise him of the specific removal consequences of his guilty plea. For non-citizens, deportation is an almost-certain consequence of certain criminal convictions. See 8 U.S.C. § 1227(a)(2)(A)(iii) (aggravated felonies); 8 U.S.C. § 1227(a)(3)(D)(i) (falsely claiming United States citizenship); 8 U.S.C. § 1227(a)(2)(A)(i) (crimes involving moral turpitude). The deportation statute at issue in Padilla was 8 U.S.C. § 1227(a)(2)(B)(i), which provides that any alien convicted of an offense relating to a controlled substance, other than possession of a small amount of marijuana, is deportable. In that case, the defense attorney did not advise his client that he would face deportation proceedings as a result of pleading guilty to a controlled substance offense. 559 U.S. at 359. The defense attorney also provided incorrect advice by stating that the defendant did not have to be concerned about the deportation consequences of his plea. Id. The Padilla Court reasoned that defense counsel could have determined that the guilty plea would result in automatic deportation simply from reading the text of the statute involved, because the statute does not address "some broad classification

of crimes but specifically commands removal for all controlled substances convictions . . . ."  Id. at 368.

The Padilla majority also cited Justice Alito's concurrence as providing examples of immigration statutes that are not "succinct and straightforward" and which require defense counsel to merely advise of the risk of deportation.  Id. at 369.  Justice Alito cited the immigration statutes governing aggravated felonies and crimes involving moral turpitude as two examples of statutes governing a "broad category of crimes" where the immigration consequences of a guilty plea are not immediately clear.  Id. at 377-78 (Alito, J., concurring).

Leger-Monegro asserts that Attorney Wilson could have easily determined that a guilty plea to providing false information to the government pursuant to 18 U.S.C. § 1001 would result in automatic deportation for an aggravated felony because the definition of an aggravated felony includes "an offense that involves fraud or deceit in which the loss to the victim or victims exceeds $10,000."  8 U.S.C. § 1101(a)(43)(M)(i).  Leger-Monegro asserts that it would have been straightforward to determine that an offense under 18 U.S.C. § 1001 involves fraud or deceit because "such wording is codified within the very terms of the statute."  (Doc. 78 at 15).  Leger-Monegro also asserts that it was clear that the loss amount in this case exceeded $10,000.

The court finds that Attorney Wilson was not required to advise Leger-Monegro of the specific consequences of his guilty plea.  The Padilla majority favorably cited Justice Alito's concurrence explaining that it is not often clear

9

whether a crime is covered by 8 U.S.C. § 1227(a)(2)(A)(iii), the statute governing deportation for aggravated felonies. 559 U.S. at 369, 377-78. See also United States v. Chan Ho Shin, 891 F. Supp. 2d 849, 855-57 (N.D. Ohio 2012) (determining that 8 U.S.C. § 1101(a)(43)(M)(i) is too complex to require a defense attorney to advise of the specific deportation consequences); Ebrahim v. LeConey, Civ. A. No. 10-6397, 2012 WL 6155655, at *13-18 (W.D.N.Y. Dec. 11, 2012) (same). But see United States v. Krboyan, Crim. A. No. 02-5438, 2011 WL 2117023, at *10 (E.D. Cal. May 27, 2011) (finding that the deportation consequences pursuant to 8 U.S.C. § 1101(a)(43)(M)(i) are unambiguous and that Padilla required defense counsel to advise the petitioner of the specific deportation consequences under it); Rianto v. United States, Civ. A. No. 12-516, 2012 WL 4863793, at *4 (E. D. Cal. Oct. 12, 2012) (same). The court has found only a single case predating Leger-Monegro's guilty plea indicating that a conviction for providing false statements to the government pursuant to 18 U.S.C. § 1001 constituted an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) and § 1101(a)(43)(M)(i). See Kellermann v. Holder, 592 F.3d 700, 707 (6th Cir. 2010). Indeed, it was not clear until the Supreme Court's decision in Kawashima v. Holder, 132 S. Ct. 1166 (2012), that 8 U.S.C. § 1101(a)(43)(M)(i) may apply to crimes where the words "fraud" or "deceit" are not formal elements of the crime. In fact, Leger-Monegro's sole, albeit unsuccessful, argument in the Executive Office for Immigration Review was that his conviction pursuant to 18 U.S.C. § 1001 did not constitute an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) and § 1101(a)(43)(M)(i). Thus, the court finds that, under the circumstances, the

deportation consequences of Leger-Monegro's guilty plea to a violation of 18 U.S.C. § 1001 was not sufficiently straightforward to require Attorney Wilson to provide specific advice. Attorney Wilson's advice to Leger-Monegro that his conviction carried the risk of deportation and to seek the advice of an immigration attorney was not objectively unreasonable.

### B. Attorney Rashad's Alleged[2] Affirmative Misadvice

Leger-Monegro claims that Attorney Rashad informed him that deportation was only a possibility if he was sentenced to 12 months or more in prison. The only evidence offered in support of this assertion came from Leger-Monegro's wife Maribel, who directly contradicted the testimony provided by Attorney Wilson. Maribel's testimony was not cogent, and the court finds Attorney Wilson's testimony to be more credible and convincing. Attorney Wilson testified that Attorney Rashad informed her that obtaining a probationary sentence of less than 12 months would only "improve [Leger-Monegro's] odds of not being deported." (Doc. 72 at 31). She stated that Attorney Rashad did not tell her that it would be a "guarantee" or a "perfect solution." (Id.) It is reasonable to believe that Attorney Rashad provided the same advice to Leger-Monegro. Moreover, by recommending that the plea agreement omit any reference to a specific loss amount, there is a

---

[2] If the court were to determine that Attorney Rashad provided incorrect advice, it is unclear whether and to what extent that would render ineffective Attorney Wilson's otherwise acceptable performance. The parties do not address this issue. Leger-Monegro has not established that Attorney Rashad provided incorrect advice and, therefore, the court declines to address it further.

11

strong likelihood that Attorney Rashad was attempting to create an ambiguity that would enable Leger-Monegro to avoid deportation as an aggravated felon pursuant to 8 U.S.C. § 1101(a)(43)(M)(i), which explicitly requires a loss amount of $10,000. (Id. at 24). In the absence of any testimony from Attorney Rashad or Leger-Monegro concerning the content of their conversations, and based upon the testimony from Attorney Wilson, the court is unable to find that Attorney Rashad provided affirmative misadvice to Leger-Monegro concerning the possibility of deportation.

Leger-Monegro cannot establish that Attorney Wilson's performance was deficient under Padilla, and therefore, he is unable to satisfy the first prong of the Strickland test.

### 2. Second Prong of the Strickland Test

Even if the legal advice provided to him was somehow deficient, Leger-Monegro has failed to demonstrate prejudice. The Third Circuit has held that "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." United States v. Orocio, 645 F.3d 630, 643 (3d Cir. 2011) *abrogated on other grounds by* Chaidez v. United States, 133 S. Ct. 1103 (2013) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). The court must find that a decision to reject a plea bargain would have been rational under the circumstances. Id. (quoting Padilla, 559 U.S. at 372).

Leger-Monegro does not provide any evidence that he would not have pleaded guilty but for Attorney Wilson's advice concerning deportation. Leger-Monegro's bald assertions to the contrary in his supplemental brief are simply unavailing. (See Doc. 78 at 16-17). Indeed, it is clear that Leger-Monegro was concerned with more than just deportation during his plea negotiations. Attorney Wilson testified that Leger-Monegro "readily agreed" with Attorney Wilson that, based on the strong evidence against him, "there would be nothing gained by taking his case to trial." (Doc. 72 at 34). Additionally, according to Attorney Wilson, Leger-Monegro "was very keen to have a probationary sentence as opposed to an incarcerative sentence." (Id. at 23).

The evidence further demonstrates that Leger-Monegro was acutely aware that deportation was a possibility under the plea agreement. Attorney Wilson stated that she repeatedly advised her client that "there were no guarantees with respect to deportation consequences" under the plea agreement. (Id. at 30). Leger-Monegro's wife testified at the hearing that she knew their plea agreements simply contained a recommendation to the court concerning a possible sentence of probation. (Id. at 17). When Leger-Monegro pleaded guilty, the court advised him that he faced a possible sentence of up to five years imprisonment. (Doc. 35 at 17). The court also made it clear to Leger-Monegro that his guilty plea could result in deportation. (Id. at 16-17). Thus, even if the court assumes that Leger-Monegro was told that only a sentence of a year or longer would result in deportation, he was aware that his guilty plea still carried the possibility of that outcome.

13

Under these circumstances, the court cannot possibly conclude that, but for Attorney Wilson's advice, there was a reasonable probability that Leger-Monegro would not have pleaded guilty and would have proceeded to trial.

## IV.     Conclusion

For the above-stated reasons, the court will deny Leger-Monegro's motion. An appropriate order follows.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:     May 5, 2014